IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | § | |
| FOR USE AND BENEFIT OF | § | |
| PATTON CONTRACTORS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-2198-D |
| VS. | § | |
| | § | |
| INNOVATIVE PERFORMANCE | § | |
| CONTRACTING, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff the United States of America for Use and Benefit of Patton Contractors, Inc. ("Patton") moves for partial summary judgment against defendants Federal Insurance Company ("Federal") and Fidelity and Deposit Company of Maryland ("Fidelity") (collectively, the "Sureties") on its claim under the Miller Act, 40 U.S.C. § 3131 *et seq.*[1] Patton and the Sureties have also filed motions to strike expert testimony. For the reasons that follow, the court grants Patton's motion for partial summary judgment, denies the motions to strike expert testimony as moot, and enters a Fed. R. Civ. P. 54(b) final judgment in favor of Patton against Federal and Fidelity.

---

[1] Patton's motion is styled as a "motion for partial summary judgment." Because Patton seeks summary judgment as to all claims against Federal and Fidelity, the court assumes that Patton styled the motion as "partial" because it is not seeking summary judgment from the defendant who is in default, Innovative Performance Contracting, Inc.

I

Except as addressed below, the facts that are material to deciding Patton's summary judgment motion are undisputed.[2] The United States contracted with Siemens Government Services, Inc. ("Siemens") as the prime contractor to perform construction work. Siemens, as principal, secured payment bonds from the Sureties.

To perform its obligations to the United States under the prime contract, Siemens entered into a subcontract with defendant Innovative Performance Contracting, Inc. ("IPC") (the "Siemens-IPC Contract"), against whom the court has entered an interlocutory default judgment. The Siemens-IPC Contract specified that IPC would be paid on a fixed-price basis,[3] and it contained the following "flow-down provision":

> [IPC], if permitted to subcontract to a second-tier subcontractor by [Siemens] . . . , is solely responsible for the payment of, and shall require its lower-tier subcontractors to pay, all assessments, taxes, benefits, and insurance premiums in connection therewith. Furthermore, [IPC] must flow down all terms contained in this Subcontract to any permitted lower-tier subcontractors[.]

Ds. App. 7.

IPC contracted with Patton as a second-tier subcontractor to provide labor and

---

[2]In deciding this motion, the court views the evidence in the light most favorable to the Sureties as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[3]It is undisputed that Siemens fully performed under the Siemens-IPC Contract, paying all amounts owed to IPC, which totaled approximately $3.8 million.

materials for IPC's work for Siemens.  The contract between IPC and Patton (the "Patton-IPC Contract") is an "indefinite quantities" contract.  It specifies that Patton will be paid for its labor and materials based on a predetermined price per fixture installed, or Davis-Bacon wages.  The Patton-IPC Contract also provides, in pertinent part:

> The Subcontractor [Patton] agrees to be bound to IPC by the Terms and Conditions of this Agreement, the contract between IPC and the Contractor [Siemens], the contract between the Contractor [Siemens] and the Owner [the United States], drawings, specifications, addenda and amendments (Contract Documents) and to assume toward IPC all the obligations and responsibilities that IPC has assumed toward the Contractor [Siemens].

P. App. 12.  The Patton-IPC Contract also specifies that any unresolved claim will be subject to mediation, and if mediation is unsuccessful, submitted to arbitration.  The decision of the arbitrator "shall be a condition precedent to any right of legal action that either party may have against the other."  *Id.* at 15.

Patton alleges that it performed work for IPC for which it was not fully paid.  Patton sues IPC, Federal, and Fidelity, alleging that IPC is liable for breach of contract[4] and that Federal and Fidelity are liable under the Miller Act.  Patton now moves for summary judgment against Federal and Fidelity, who oppose the motion.

---

[4]As noted above, IPC is in default.

II

Because Patton will have the burden of proof at trial on its Miller Act claim, to obtain summary judgment it "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Patton must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)). "An issue of fact is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in that party's favor that the evidence allows, would be sufficient to support a verdict in the party's favor." *Bank One*, 878 F. Supp. at 962 (citing *Hilton v. Sw. Bell Tel. Co.*, 936 F.2d 823, 827 (5th Cir. 1991) (per curiam). "An issue of fact is not genuine if no reasonable trier of fact could find in favor of the nonmovant." *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated by Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

III

"The Miller Act requires that a general contractor on a federal project post a bond for the purpose of protecting the suppliers of materials for the project." *Jems Fabrication, Inc., USA v. Fid. & Deposit Co. of Md.*, 566 Fed. Appx. 298, 300 (5th Cir. 2014) (citing *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 220 (5th Cir. 2012)). "It provides suppliers and subcontractors with the right to sue a prime contractor to recover on the bond for the amounts owed to them." *Id.* (citing 40 U.S.C. § 3133(b)(1)). Congress enacted the statute "to protect parties such as subcontractors or suppliers who work on federal projects as state-law liens cannot be applied against federally-owned property and traditional state-law remedies are unavailable." *Arena*, 669 F.3d at 220. "The Miller Act is 'highly remedial in nature' and 'is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'" *Jems*, 566 Fed. Appx. at 301 (quoting *Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944)).

> The elements of a Miller Act claim are: (1) the plaintiff supplied materials in prosecution of the work provided for in the contract; (2) the plaintiff has not been paid; (3) the plaintiff had a good faith belief that the materials were intended for the specified work; and (4) the plaintiff meets the jurisdictional requisites of timely notice and filing.

*Id.* (citing *U.S. for Use & Benefit of Carlson v. Cont'l Cas. Co.*, 414 F.2d 431, 433 (5th Cir. 1969); *U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984)).

Patton contends that it is entitled to summary judgment on its Miller Act claim because it has satisfied all of the necessary elements beyond peradventure. It maintains that it furnished labor and materials for which the Sureties issued payment bonds; it has not timely been paid in full; it has a direct contractual relationship with a subcontractor (IPC) but no contractual relationship, express or implied, with the contractor posting the payment bonds (Siemens); and it meets the jurisdictional requisites of timely notice and filing. In response, the Sureties oppose summary judgment on four grounds, only one of which involves a disputed fact; otherwise, they accept the evidence on which Patton relies. The court will address each of the Sureties' arguments in turn.

IV

The Sureties contend that Patton agreed to be bound by the Siemens-IPC Contract, which includes a fixed-price pricing structure that establishes a cap of $3.8 million for which the Sureties can be held liable. They maintain that because Siemens has already paid this amount to IPC, the Sureties cannot be held liable for anything more.

A

According to the Sureties, Patton agreed to be bound by the Siemens-IPC Contract because the Patton-IPC Contract incorporated that contract by reference; the fixed-price pricing structure in the Siemens-IPC Contract, which imposes a cap of $3.8 million for which the Sureties are liable, conflicts with the per-unit or Davis-Bacon wages pricing structure found in the Patton-IPC Contract; this "clear conflict in compensation structures," Ds. Br. 7, means that the court should give effect to the fixed-price pricing structure in the earlier

- 6 -

contract (the Siemens-IPC Contract) because, under secondary rules of contract construction, earlier terms control over later, conflicting terms; and because the fixed-price pricing structure applies, Patton cannot recover from the Sureties because Siemens has already paid IPC the full $3.8 million.

Patton responds that there is no conflict between the contracts because they are separate agreements that pertain to different contractual relationships. According to Patton, the pricing term in the Siemens-IPC Contract provides that Siemens will pay IPC for IPC's work under the contract on a fixed-price basis, and that the Patton-IPC Contract provides that IPC will pay Patton for Patton's work on a per-unit basis, or Davis-Bacon wages.

B

"The Miller Act . . . is highly remedial in nature [and] . . . is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *MacEvoy Co.*, 322 U.S. at 107 (citing *Fleisher Eng'g & Const. Co. v. U.S. for Use & Benefit of Hallenbeck*, 311 U.S. 15, 17-18 (1940)). Courts are therefore "reluctant to incorporate into the subcontract provisions of the prime contract which adversely affect the Miller Act rights of the subcontractor." *U.S. for & on Behalf of Delta Metals, Inc. v. R.M. Wells Co., Inc.*, 497 F. Supp. 541, 544 (S.D. Ga. 1980); *see also U.S. for Use & Benefit of T/N Plumbing & Heating Co. v. Fryd Const. Corp.*, 423 F.2d 980, 983 (5th Cir. 1970) (noting that courts are reluctant to conclude that a subcontractor has contractually abandoned his Miller Act rights).

The Patton-IPC Contract also contains a flow-down provision. It provides that Patton

"agrees to be bound to IPC by the Terms and Conditions of this Agreement, the contract between IPC and the Contractor [Siemens], the contract between the Contractor and Owner [the United States], . . . and to assume toward IPC all the obligations and responsibilities that IPC has assumed toward the Contractor." P. App. 12. The Sureties contend that this general incorporation by reference binds Patton to the fixed-payment pricing structure of the Siemens-IPC Contract, despite the fact that Patton was not a party to that contract.

Although incorporation by reference is a valid means of including the terms of one agreement in another, courts have held that, in the context of a Miller Act claim, "a general incorporation by reference, of the terms of the principal contract, refers only to 'the quality and manner of the subcontractor's work, not the rights and remedies he may have against the prime contractor.'" *Fryd*, 423 F.2d at 983 (citing *H.W. Caldwell & Son, Inc. v. U.S. for Use & Benefit of John H. Moon & Sons, Inc.*, 407 F.2d 21, 23 (5th Cir. 1969)). Absent a specific reference to provisions in the prime contract governing methods of calculating payments, courts have declined to hold that the prime contract's payment provisions apply to a subcontractor's rights under the Miller Act. *See Edward E. Morgan Co. v. U.S. for Use & Benefit of Pelphrey*, 230 F.2d 896, 903 (5th Cir. 1956) (holding that general incorporation clause related only to manner of performance of subcontractor's work, not to manner of computing amount of subcontractor's payment); *cf. United Tunneling Enters., Inc. v. Havens Constr. Co.*, 35 F.Supp.2d 789, 795 (D. Kan. 1998) (holding that liquidated damages clause did flow through to subcontract where subcontract specifically referred to contractor's liability and adopted the same rate of liability as found in prime contract).

The flow-down provision of the Patton-IPC Contract neither specifically incorporates the methods of payment in the Siemens-IPC Contract nor mentions any specific provision of the Siemens-IPC Contract. Therefore, the court holds that this clause refers only to the manner of performing Patton's work, not to the method by which IPC will pay Patton.[5] Accordingly, the court holds that the fixed-price structure under the Siemens-IPC Contract does not preclude Patton from recovering from the Sureties under the Miller Act.

V

The Sureties maintain that Patton failed to give timely notice for several projects, and that Patton's attempt to recover the amount owed for these projects (totaling $156,707.61) is time-barred.

A

Under the Miller Act, a person who seeks payment under a payment bond must give "written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). The Sureties posit that Patton's lawsuit is in fact one for payment on multiple projects, and that, to be timely, it was necessary for Patton to give notice within 90 days after the last of the labor or materials were furnished to *each* separate project. They contend that, because Patton only provided one notice (on April 17,

---

[5]Because the court concludes that there is no conflict and that the fixed-price provision in the Siemens-IPC Contract does not apply to Patton, the court need not consider the Sureties' argument that the fixed-price structure caps the total amount to be paid at $3.8 million.

2012), this notice was untimely as to any jobs that concluded more than 90 days before April 17, 2012.

Patton responds that the notice was timely as to all of the individual job sites, because the Patton-IPC Contract constitutes one project for which it was necessary to give notice only once: within 90 days after the last of the labor or materials were furnished for that one project. Patton contends that the last of the labor or materials were furnished for the entire project on March 16, 2012, so the notice given on April 17, 2012 was timely and sufficient for Patton's entire claim.

B

The facts regarding the date on which Patton provided notice and the dates on which it performed the services in question are undisputed. Therefore, the question whether Patton gave timely and sufficient notice turns solely on whether Pattons' work under the Patton-IPC Contract are treated separately under the Miller Act or as one project that required only one notice.

In *S.S. Silberblatt, Inc. v. U.S. for Use & Benefit of Lambert Corp.*, 353 F.2d 545 (5th Cir. 1965), the Fifth Circuit considered whether a Miller Act plaintiff was required to give one notice or multiple notices to recover unpaid amounts for materials furnished for five different projects. *Id.* at 546. The prime contractor in *Silberblatt* entered into one prime contract with the United States to construct five housing projects, but the prime contractor used five separate corporations to develop the five projects, and it secured five separate payment and performance bonds. *Id.* The court concluded that, under those facts, separate

notices were required. But it stated that where "[o]nly one construction contract, one prime contractor . . . , one surety . . ., and one subcontractor . . . , were involved[,] [h]ad there been only one bond covering th[e] contract and the[] parties[,]" a single notice would have been sufficient to comply with the 90-day notice requirement. *Id.* at 548.

The scenario that the panel addressed in *Silberblatt* is materially indistinguishable from the one at issue here. One prime contractor (Siemens) entered into one prime contract with the United States to perform all of the jobs referenced in Patton's complaint. All the work was covered by bonds that Federal and Fidelity issued. The payment bonds that Siemens furnished covered the entire project and the work that Patton performed. The claim of Patton is that of one subcontractor seeking relief under a single subcontract (with IPC). Under these facts, the single notice that Patton gave within 90 days of the date on which it furnished the last of the labor or materials for which the claim is made is sufficient. *See U.S. for Use of Honeywell, Inc. v. A&L Mech. Contractors, Inc.*, 677 F.2d 383, 384-85 (4th Cir. 1982) (considering prime contract consisting of renovation of five individual dormitories, and treating contract as one "prolonged project," not five distinct, separate projects requiring five, distinct separate notices); *GE Supply v. C & G Enters., Inc.*, 212 F.3d 14, 18 (1st Cir. 2000) (holding that single notice was sufficient where it was undisputed that surety "issued a single payment bond" on behalf of prime contractor).

In support of their position, the Sureties cite *United States for Use & Benefit of Kinlau Sheet Metal Works, Inc. v. Great American Insurance Co.*, 537 F.2d 222 (5th Cir. 1976), in which the Fifth Circuit held that separate notices were required for three separate projects at

an Air Force base. But in *Kinlau* the panel considered not just one contract, but three separate government contracts supported by three separate performance and payment bonds. *See id.* at 223 (referring to three improvement projects on Air Force base).[6] *Kinlau* is therefore factually inapposite.[7]

Based on the undisputed material facts of this case, the court holds that Patton's notice on April 17, 2012 was timely under the Miller Act.

VI

The Sureties posit that Patton's Miller Act claim depends on proving its underlying breach of contract claim against IPC, and that the underlying claim fails as a matter of law because Patton did not fulfill the condition precedent that it first take its claims against IPC to mediation and then to arbitration.

A

According to the Sureties, under the Patton-IPC Contract, Patton was required to submit any contractual dispute to mediation and, if still unresolved, to arbitration. The Sureties contend that this requirement is a condition precedent to any right of legal action under the Patton-IPC Contract, and that, because Patton failed to initiate arbitration, it does

---

[6]Because the *Kinlau* opinion and its recitation of the facts are themselves brief, the court has consulted the briefing on file to corroborate that the three projects involved three separate performance and payment bonds.

[7]*Berger Enterprises v. Zurich American Insurance Co.*, 845 F.Supp.2d 809 (E.D. Mich. 2012), on which the Sureties rely, is also factually inapposite. In *Berger* the district court refrained from deciding in the context of a motion to dismiss whether the "project" alleged was one project or multiple projects. *Id.* at 816.

not yet have the legal right to claim unpaid amounts under the contract.

Patton responds that, because the Patton-IPC Contract is between only Patton and IPC, the right to demand arbitration belongs to IPC alone. It also maintains that, even if the Sureties are entitled to assert the right to demand arbitration, IPC waived the right to arbitration by defaulting in this lawsuit.

B

"The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." *F.D. Rich Co. v. United States for Use of Indust. Lumber Co.*, 417 U.S. 116, 127 (1974). "In contrast to a surety who provides a payment bond on a private construction project or pursuant to a 'little Miller Act' under state law, the liability of a Miller Act surety is controlled by federal law[.]" *U.S. for Use & Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206 (9th Cir. 2002) (citing *Cont'l Cas. Co. v. Schaefer*, 173 F.2d 5, 8 (9th Cir. 1949)). "A Miller Act claim is separate and not derived from a breach of contract claim[,]" and "[a]lthough the *extent* of the surety's liability may be premised on the breach of the subcontract," a subcontractor can maintain a Miller Act claim against the surety without succeeding on or even bringing an action for breach of contract against the contractor. *U.S. ex rel. Trinity Indus. Servs., LLC v. Fed. Ins. Co.*, 2012 WL 4928907, *4 (M.D. Ga. Oct. 16, 2012) (emphasis added) (citing *U.S. for Use of Henderson v. Nucon Const. Corp.*, 49 F.3d 1421, 1423 (9th Cir. 1995); *U.S. for Use & Benefit of Apex Roofing & Insulation, Inc. v. Union Indem. Ins. Co.*, 865 F.2d 1226, 1227 (11th Cir. 1989)). "Thus,

the liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act." *Walton Tech.*, 290 F.3d at 1206. "A contract provision that would deny the subcontractor its federal remedy under the Act cannot be used as a defense by a surety." *U.S. for Use & Benefit of McKenney's, Inc. v. Gov't Tech. Servs., LLC*, 531 F.Supp.2d 1375, 1380 (N.D. Ga. 2008) (citing *Walton Tech.*, 290 F.3d at 1209).

The Sureties maintain that Patton has failed to satisfy a condition precedent to the Patton-IPC Contract, that Patton's breach of contract claim against IPC is not yet enforceable, and that Patton cannot recover from the Sureties as a result. But a plaintiff's Miller Act claim is not derivative of any breach of contract claim that it may assert. Failure to satisfy a condition precedent contained in the underlying contract is merely a defense to contractual liability. *See Girma v. Compass Bank*, 2006 WL 1499983, *3 (N.D. Tex. May 31, 2006) (Fitzwater, J.) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)) ("Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty."). It is *not* a defense to liability under the Miller Act. *See McKenney's*, 531 F.Supp.2d at 1380 (holding that while failure to satisfy condition precedent is state-law defense to breach of contract claim, it cannot be used to avoid liability under the Miller Act).

Therefore, the court holds that the Sureties cannot rely on Patton's alleged failure to comply with the mediation/arbitration condition precedent contained in the Patton-IPC

Contract to preclude Patton from recovering on its Miller Act claim against the Sureties.

VII

The Sureties maintain that Patton is not entitled to summary judgment because there is a genuine issue of material fact regarding whether it performed all of the work alleged.

A

Patton has introduced evidence that it performed all the labor, and supplied all the materials, necessary to complete the work required of it under the Patton-IPC Contract. This evidence includes the declaration of Patton's senior project manager, who avers that "Patton Contractors performed all work under the Subcontract Agreement," P. App. 7, and the invoices sent to IPC for the unpaid work it performed.

The Sureties respond that there is a genuine issue of material fact regarding whether Patton in fact performed all of the labor it alleges. They cite in support only the declaration of Dave Fladda ("Fladda"), a Siemens Operations Manager, who states, "on information and belief, Patton has billed for work that it did not actually perform. For example, on information and belief, Mickey Moon, a Patton employee . . . , billed for full days of work performed on days when he was not physically at the job site." Ds. App. 2.

B

The Fladda affidavit is insufficient to create a genuine fact issue. Fed. R. Civ. P. 56(e) governs the form of evidence that can be used to support or oppose a summary judgment motion. It provides, in relevant part, that supporting affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively

that the affiant is competent to testify to the matters stated. *Id.* As a general rule, admissibility of evidence on summary judgment is subject to the same rules that govern admissibility of evidence at trial. *Lavespere*, 910 F.2d at 175-76; *Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that summary judgment affidavits must be based on personal knowledge and set out only facts that would be admissible in evidence).

Fed. R. Evid. 602 requires that evidence be based on personal knowledge. The affidavit need not affirmatively state that the affiant is competent to testify so long as the record as a whole shows that his testimony meets the requirements of Rule 56. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987); *Brueggemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452, 463 (N.D. Tex. 1988) (Fitzwater, J.). Because the Fladda affidavit does not state that it is based on personal knowledge and does not otherwise demonstrate that Fladda had personal knowledge in this pertinent respect, the court holds that it is insufficient to create a genuine issue of fact. Therefore, Patton's otherwise undisputed evidence in the form of a sworn affidavit and invoices established beyond peradventure that Patton performed the work it alleges.

VIII

Because Patton has established beyond peradventure all of the essential elements of its Miller Act claim under 40 U.S.C. § 3133(b) and the Sureties' four grounds for opposing Patton's motion are insufficient for the reasons stated, the court holds that Patton is entitled to summary judgment in the sum of $317,928.33, together with prejudgment interest on this

...

sum at the rate of 6% per annum, beginning on April 17, 2012, as calculated under state law. *See, e.g., U.S. for Use of Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 922 (5th Cir. 1998) ("It is undisputed that prejudgment interest falls within the 'scope of the remedy' available to a Miller Act claimant. State law governs the prejudgment interest award." (citation omitted)).[8]

IX

Because the court is granting Patton's motion for partial summary judgment, it denies without prejudice as moot the parties' motions to strike experts.

\*   \*   \*

For the reasons explained, the court grants Patton's motion for partial summary judgment, and it denies as moot the parties' cross-motions to strike experts, and it enters a Rule 54(b) final judgment in favor of Patton against Federal and Fidelity.

**SO ORDERED.**

September 26, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[8]In its complaint, Patton requests that the court award attorney's fees. Attorney's fees are not an available remedy under the Miller Act, *F.D. Rich*, 417 U.S. at 127, and Patton has asserted only a Miller Act claim against the Sureties. But if Patton concludes that it has a legal basis to recover attorney's fees, it may apply for such an award under the procedure prescribed in Rule 54(d)(2).